IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Sloan Financial Group, LLC, | ) | Civil Action No. 0:09-2659-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **VERIFIED COMPLAINT** |
| | ) | **AND MOTION FOR** |
| Marcus P. Coe and | ) | **PRELIMINARY INJUNCTION** |
| Allied Insurance Marcus Coe Agency, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Sloan Financial Group, LLC, comes now before this Court and would respectfully show the following:

**I. Parties, Jurisdiction, Venue**

1. Plaintiff is a South Carolina corporation that is duly authorized and registered to conduct business within the State of South Carolina with its headquarters located in Clover, South Carolina.

2. Plaintiff is primarily in the business of providing insurance, financial planning, and tax preparation services to its clients.

3. Upon information and belief, Defendant Marcus P. Coe ("Individual Defendant") is a citizen and resident of Clover, South Carolina, and is at least 18 years old.

4. Defendant Allied Insurance Marcus Coe Agency, LLC ("Corporate Defendant") is, upon information and belief, registered to conduct business in the State of South Carolina with its principal place of business located in Clover, South Carolina. Individual Defendant is the registered agent for Corporate Defendant.

1

5. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claim for computer fraud and abuse arises under the laws of the United States. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state law claims.

6. Venue is proper under 28 U.S.C. § 1391(b) because Individual Defendant resides in this judicial district, Corporate Defendant's principal place of business is in this judicial district, and/or because a substantial part of the events or omissions giving rise to the claim(s) occurred in this judicial district.

## II. Factual Allegations

7. Individual Defendant began working for Plaintiff as an insurance sales representative on or about June 7, 2006.

8. Plaintiff has expended significant time and resources developing its products, and creating and maintaining confidential business information regarding its customers, products, and services. Such information constitutes the trade secrets of Plaintiff. In order to maintain a competitive business advantage, Plaintiff makes reasonable efforts to maintain the confidentiality of its trade secret information by, among other things, stressing the importance of confidentiality, restricting access to those employees who need the information to carry out their duties, and by utilizing computer passwords for access to Plaintiff's computer network.

9. Plaintiff maintains and distributes to its employees confidentiality policies intended to prohibit employees from improperly using or disclosing, among other things, personal and confidential information concerning its clients. Individual Defendant was issued and repeatedly made aware of these policies.

10. Plaintiff also maintains and distributes to its employees policies intended to prohibit employees from competing with Plaintiff, improperly benefiting from Plaintiff's business, and using confidential information for personal gain. Individual Defendant was issued and repeatedly made aware of these policies.

11. On October 7, 2008, Individual Defendant emailed, without permission and in violation of Plaintiff's confidentiality policies, a Microsoft Excel spreadsheet containing confidential policy information on approximately seventy (70) of Plaintiff's clients from his work email account to his personal email account. The spreadsheet included information such as client names, policy effective dates, insurance carrier names, product types, policy numbers, and premium amounts. The aforementioned confidential information and trade secrets are not publicly known or readily ascertainable by legitimate means.

12. On November 17, 2008, Individual Defendant was issued a written warning regarding his work performance. Individual Defendant signed the warning reaffirming his commitment to comply with all of Plaintiff's policies.

13. On November 18, 2008, Individual Defendant emailed, without permission and in violation of Plaintiff's confidentiality policies, a Microsoft Excel spreadsheet containing confidential policy information on approximately two-hundred (200) of Plaintiff's clients from his work email account to his personal email account. The spreadsheet included information such as client names, policy effective dates, insurance carrier names, product types, policy numbers, and premium amounts. The aforementioned confidential information and trade secrets are not publicly known or readily ascertainable by legitimate means.

14. Plaintiff is informed and believes that Individual Defendant's personal and work computer systems, which include emails sent to and received from Individual Defendant's email

account with Plaintiff, contain a vast array of highly confidential information and trade secrets belonging to Plaintiff, which Defendants are using to unfairly compete against Plaintiff.

15. Plaintiff is informed and believes that Individual Defendant sent the aforementioned October 7th and November 18th emails and attachments to his personal email address for the purpose of the unfairly competing against Plaintiff on behalf of and in concert with Corporate Defendant.

16. There exists no legitimate reason for Individual Defendant to have emailed a vast amount of documents containing Plaintiff's confidential trade secrets to his personal email address at any time, much less just prior to him resigning from Plaintiff to form and work for Corporate Defendant.

17. Plaintiff is informed and believes that Individual Defendant accessed without authority and/or in excess of the authority afforded to him Plaintiff's computer network on multiple occasions between October 2008 through January 2009 in order to misappropriate Plaintiff's trade secrets and confidential customer information for his own benefit and the benefit of Corporate Defendant, and on behalf of and with the authorization of Corporate Defendant.

18. In December 2008, while employed by Plaintiff, Individual Defendant accessed the computer issued to him by Plaintiff to search "agent of record," "agent of record change," and "broker dealer transfer" on the Harleysville Insurance Company's electronic database. Plaintiff is a broker for Harleysville Insurance Company's products. Plaintiff is informed and believes that Individual Defendant engaged in such actions, while still employed by Plaintiff, for the express purpose of competing against Plaintiff.

19. In December 2008 and January 2009, Individual Defendant ordered, at Plaintiff's significant expense, numerous "ChoicePoint" inquiries on individuals who never became clients

of Plaintiff. Plaintiff is informed and believes that Individual Defendant engaged in such actions, while still employed by Plaintiff, for the purpose of competing against Plaintiff and for causing Plaintiff to unnecessarily incur significant expense from the charges for such inquiries.

20. On or between the end of December 2008 and the beginning of January 2009, while still an employee of Plaintiff, Plaintiff is informed and believes that Individual Defendant communicated with some of Plaintiff's clients regarding renewing old policies and providing quotes for new policies. While still an employee of Plaintiff, Plaintiff is informed and believes that Individual Defendant made false and/or misleading representations to these clients intended to induce them to leave Plaintiff and join him at a competing insurance company he was in the process of forming.

21. On January 12, 2009, Individual Defendant accessed a "Summary of Upcoming Renewals" on the Harleysville Insurance Company electronic database. The list identified customer last names, policy numbers, policy types, status of policies, premium amounts, and renewal dates. Plaintiff is informed and believes that Individual Defendant, while employed by Plaintiff, accessed such confidential information in an unauthorized manner for the purpose of using such confidential information to compete against Plaintiff.

22. On or about January 21, 2009, while still employed by Plaintiff, Individual Defendant registered his new insurance agency with the South Carolina Department of Insurance as "Allied Insurance Marcus Coe Agency, LLC." Individual Defendant is, upon information and belief, the owner of Corporate Defendant.

23. On January 30, 2009, Individual Defendant resigned from his employment with Plaintiff. Having already registered Corporate Defendant, Individual Defendant continued working with and on behalf of Corporate Defendant to compete against Plaintiff.

24.     Individual Defendant's mother, Deborah ("Debbie") Coe, was also an employee of Plaintiff. Debbie Coe resigned on January 30, 2009, at the same time Individual Defendant resigned, and, upon information and belief, immediately began working as an employee of Corporate Defendant.

25.     Defendants have served or caused change of agency forms to be executed by approximately one hundred (100) former clients of Plaintiff.

26.     Since his separation from Plaintiff, Individual Defendant, without authorization, has been accessing and using Plaintiff's confidential telephone customer service center to obtain information about and provide service to clients with Harleysville Insurance Company policies, including, but not limited to, Plaintiff's current and former clients. Individual Defendant is no longer an authorized user of this center as of the date of his separation from Plaintiff. Plaintiff is informed and believes that Individual Defendant has engaged in such actions with the authorization of and on behalf of Corporate Defendant.

27.     Since his separation from employment with Plaintiff, and while working for and with the approval of Corporate Defendant, Individual Defendant, upon information and belief, has provided Plaintiff's customers with "change of agent" forms and falsely informed Plaintiff's customers that they will need to change their policies to him as the agent of record in order to maintain or continue their Harleysville Insurance Company policy. Plaintiff is informed and believes that customers of Plaintiff, relying upon Individual Defendant's false assertions, have executed change of agent forms.

28.     While working for and with the approval of Corporate Defendant, Individual Defendant, upon information and belief, has made false representations to Plaintiff's customers regarding discounts to their policy premiums that they were receiving from Plaintiff in an effort

6

to induce them to leave Plaintiff. Plaintiff is informed and believes that customers of Plaintiff, relying upon Individual Defendant's false assertions, have executed change of agent forms.

29. On or about February 3, 2009, Angela Sloan, President of Plaintiff, sent correspondence to Individual Defendant reminding him of his duty not to use or disclosure Plaintiff's confidential and proprietary information. On or about March 20, 2009, Plaintiff's counsel sent correspondence to Individual Defendant demanding he cease and desist from engaging in unlawful conduct and return all of Plaintiff's confidential and legally protected information. Individual Defendant has failed or refused to comply with those demands.

### III. Causes of Action

**FOR A FIRST CAUSE OF ACTION AS TO ALL DEFENDANTS**
**(Violation of the Computer Fraud and Abuse Act - 18 U.S.C. §§ 1030 *et seq.*)**

30. Plaintiff incorporates Paragraphs 1-29 of the Verified Complaint as if repeated herein verbatim.

31. The computer assigned by Plaintiff to Defendant was at all relevant times used in or affecting interstate or foreign commerce or communication and is therefore a "protected computer" under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(e)(2)(B).

32. Plaintiff is informed and believes that Individual Defendant, with the knowledge and/or approval of, and as an agent for, Corporate Defendant, intentionally accessed a computer without authorization and/or in excess of the authority he had been afforded by, among other things, ordering "ChoicePoint" inquiries at Plaintiff's significant expense on individuals who never became clients of Plaintiff and thereby obtained information contained in a file of a consumer reporting agency on a consumer in violation of 18 U.S.C. § 1030(a)(2)(A).

33. Plaintiff is informed and believes that Individual Defendant, with the knowledge and/or approval of, and as an agent for, Corporate Defendant, intentionally accessed a computer

7

without authorization and/or in excess of the authority he had been afforded by, among other things, accessing a "Summary of Upcoming Renewals" on the Harleysville Insurance Company electronic database to obtain confidential information about Plaintiff's clients with Harleysville Insurance Company policies for the purpose of using such confidential information to unlawfully compete against Plaintiff and thereby obtained information from Plaintiff's protected computer in violation of 18 U.S.C. § 1030(a)(2)(C).

34.     Plaintiff is informed and believes that Individual Defendant, with the knowledge and/or approval of, and as an agent for, Corporate Defendant, knowingly and with intent to defraud accessed Plaintiff's protected computers without authorization and/or in excess of the authorized access he had been afforded by, among other things, emailing valuable clients lists and confidential information to his personal email account, ordering "ChoicePoint" inquiries at Plaintiff's significant expense on individuals who never became clients of Plaintiff, and accessing a "Summary of Upcoming Renewals" on the Harleysville Insurance Company electronic database to obtain confidential information about Plaintiff's clients with Harleysville Insurance Company policies whom he intended to unlawfully solicit on behalf of his new agency, and by means of such conduct furthered his intended fraud and obtained, among other things, Plaintiff's confidential information and trade secrets, the value of which exceeds $5,000 in any one-year period in violation of 18 U.S.C. § 1030(a)(4).

35.     Plaintiff is informed and believes that Individual Defendant, with the knowledge and/or approval of, and as an agent for, Corporate Defendant, intentionally accessed Plaintiff's protected computer without authorization by, among other things, emailing valuable clients lists and confidential information to his personal email account, and as a result of such conduct, recklessly

caused damage and/or caused damage and loss by impairing the integrity and/or availability of the information in violation of 18 U.S.C. § 1030(a)(5)(B) & (C).

36. Defendants' conduct caused a loss to Plaintiff, including, but not limited to, costs incurred investigating and responding to Defendants' violations, conducting a damage assessment, attempting to restore the data to its condition prior to Defendants' violations, as well as loss of capital, loss of business, loss of profits and future profits, and loss of good will, the value of which during a one-year period is at least $5,000.

37. Without the benefit and use of the information Defendants obtained from unlawfully accessing Plaintiff's protected computers, Individual Defendant would not have been able to begin his competing insurance agency.

38. As a result of Defendants' conduct in violation of the CFAA, Plaintiff is entitled to recover compensatory damages under 18 U.S.C. § 1030(g) in an amount to be determined at trial.

39. Plaintiff is also entitled to injunctive and other equitable relief under 18 U.S.C. § 1030(g) because Plaintiff has and will continue to suffer irreparable harm and loss as a result of Defendants' unlawful conduct.

## FOR A SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS
**(Breach of the Duty of Loyalty)**

40. Plaintiff incorporates Paragraphs 1-39 of the Verified Complaint as if repeated herein verbatim.

41. As an employee of Plaintiff, Individual Defendant owed Plaintiff a duty of loyalty.

42. During his employment with Plaintiff, Individual Defendant breached his duty of loyalty by, among other things, emailing valuable client lists and confidential information to his personal email account for the purposes of using such confidential information for his personal benefit and unlawful competition against Plaintiff, soliciting Plaintiff's clients to leave Plaintiff and

become Defendants' clients before Individual Defendant resigned his employment with Plaintiff, ordering "ChoicePoint" inquiries at Plaintiff's expense for individuals whom Individual Defendant had no intention of procuring for Plaintiff, and accessing Harleysville Insurance Company's electronic database for improper and fraudulent purposes, including, but not limited to, obtaining confidential information on Plaintiff's clients.

43.     Plaintiff is informed and believes that Individual Defendant was induced to breach his duty of loyalty to Plaintiff by Corporate Defendant, which cooperated in or reaped the benefits of such breach and aided or assisted him in violating Plaintiff's trust by divulging Plaintiff's confidential information and trade secrets.

44.     As a direct and proximate result of Defendants' willful and intentional breach of Individual Defendant's duty of loyalty, Plaintiff has suffered damages in an amount equal to the wages, commissions, and other compensation and benefits provided to Defendants resulting from the disloyal actions.

## FOR A THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS
**(Misappropriation of Trade Secrets and Confidential and Proprietary Information)**

45.     Plaintiff incorporates Paragraphs 1-44 of the Verified Complaint as if repeated herein verbatim.

46.     Plaintiff has unique, valuable, confidential, and proprietary information concerning its clients and their insurance needs and policy details, including, but not limited to, client lists, policy premium amounts, policy expiration dates, insurance carrier names, product types, and policy numbers. This information constitutes a trade secret under the South Carolina Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 *et seq.* (Supp. 2006).

47.     Plaintiff's trade secrets are known only to Plaintiff and its limited, specified employees and are not generally known to the public or Plaintiff's competitors.

48. Plaintiff's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, the public or any other person who can obtain economic value from its disclosure or use.

49. Plaintiff's customer lists cannot be duplicated by Defendants or any other competitor without significant time, effort, and expense.

50. Plaintiff's confidential trade secret information provides it with a competitive business advantage.

51. Plaintiff goes to great lengths and expense to maintain the confidentiality of its trade secrets, including, but not limited to, restricting access to the information to employees who need to know it, by password protecting all electronic databases, and by maintaining and distributing confidentiality policies for employees to sign acknowledging their understanding of Plaintiff's commitment to protecting its trade secrets and other confidential information.

52. Plaintiff communicated its trade secrets in confidence to Individual Defendant while he was employed by Plaintiff. Individual Defendant was issued and made repeatedly aware of policies from Plaintiff restricting the use of such confidential information. Plaintiff is informed and believes that Plaintiff's trade secrets were disclosed by Individual Defendant in breach of the confidence entrusted to him by Plaintiff.

53. Individual Defendant misappropriated Plaintiff's trade secrets in violation of S.C. Code Ann. § 39-8-30 by, among other things, emailing valuable client lists and confidential client and policy information to his personal email account. The information sent by Individual Defendant from his work email to his personal email address prior to his departure to form and work for Corporate Defendant contained a compilation of trade secret information developed and maintained by Plaintiff and/or for Plaintiff's benefit at substantial effort and expense.

11

54. Plaintiff is informed and believes that Plaintiff's trade secrets were acquired by Corporate Defendant with knowledge of the breach of confidence.

55. Plaintiff's trade secrets were used by Defendants to the detriment of Plaintiff. Plaintiff is informed and believes that Defendants have misappropriated, and continue to misappropriate, Plaintiff's trade secrets in order to obtain an unfair competitive advantage.

56. Defendants' actions were willful, wanton, and in reckless disregard of Plaintiff's rights.

57. As a proximate result of Defendants' willful misappropriation while Individual Defendant was employed by Plaintiff and thereafter, Plaintiff has suffered damages, including, but not limited to, lost profits, loss of clients, loss of goodwill, loss of confidentiality of its trade secrets, and loss of competitive position for which Plaintiff should be compensated.

58. Plaintiff is entitled to all relief available under the South Carolina Trade Secrets Act for Defendants' actions, including actual damages, unjust enrichment damages, costs, pre-judgment interest, and reasonable attorney's fees, as well as an award of exemplary damages in an amount not exceeding twice the actual damages awarded.

59. Defendants' actions as alleged herein will be a continual cause of irreparable harm to Plaintiff unless Defendants are enjoined from using and/or disclosing Plaintiff's trade secrets. Because there is not an adequate remedy at law, Plaintiff is entitled to a preliminary and permanent injunction restraining and enjoining Defendants from, among other things, using and/or disclosing Plaintiff's trade secrets or taking any action that would permit or require them to use and/or disclose Plaintiff's trade secrets. Plaintiff is entitled to injunctive relief pursuant to S.C. Code Ann. § 39-8-50.

**FOR A FOURTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
(Intentional Interference with Existing Business Relations)

60.     Plaintiff incorporates Paragraphs 1-59 of the Verified Complaint as if repeated herein verbatim.

61.     Plaintiff enjoyed valid contractual business relationships with its clients for which Defendants have unfairly competed and will likely continue to unfairly compete.

62.     By virtue of Individual Defendant's dealings with clients while an employee of Plaintiff, Defendants were aware and had knowledge of Plaintiff's contractual relationships with its clients.

63.     Notwithstanding Defendants' awareness and knowledge of the relationships between Plaintiff and its clients, Defendants, without sufficient justification, upon information and belief, intentionally procured the breach of the relationships by using Plaintiff's confidential client lists and information to solicit Plaintiff's clients and induce them to terminate their existing business relationships with Plaintiff.

64.     As a direct and proximate result of Defendants' intentional interference with the relationships Plaintiff had with its clients, Plaintiff has suffered damages through lost business, good will, profits, and other actual and consequential damages.

65.     Additionally, Plaintiff is entitled to punitive damages as a result of Defendants' willful, reckless, and malicious actions intended to harm Plaintiff.

**FOR A FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS**
(Intentional Interference with Prospective Business Relations)

66.     Plaintiff incorporates Paragraphs 1-65 of the Verified Complaint as if repeated herein verbatim.

67. Upon information and belief, Defendants engaged in intentional acts through improper means, including, but not limited to, ordering ChoicePoint inquiries at Plaintiff's expense on individuals who never became clients of Plaintiff, accessing a "Summary of Upcoming Renewals" on the Harleysville Insurance Company electronic database to obtain confidential information about Plaintiff's clients with Harleysville Insurance Company policies, accessing and using Plaintiff's confidential customer service center to obtain information about and provide service to clients with Harleysville Insurance Company policies, and soliciting Plaintiff's customers to refrain from renewing insurance policies with Plaintiff in order to purchase their new insurance policies through Defendants, all for the improper purpose of procuring potential clients of Plaintiff.

68. Plaintiff's expectation of providing services to these clients was a close certainty and was not purely speculative.

69. As a direct and proximate result of Defendants' intentional and improper actions, Plaintiff has suffered both actual and consequential damages.

70. Additionally, Plaintiff is entitled to punitive damages as a result of Defendants' willful, reckless, and malicious actions intended to harm Plaintiff.

### FOR A SIXTH CAUSE OF ACTION AS TO INDIVIDUAL DEFENDANT
(Civil Conspiracy)

71. Plaintiff incorporates Paragraphs 1-70 of the Verified Complaint as if repeated herein verbatim.

72. Upon information and belief, Individual Defendant engaged in collaborative efforts with his mother, Debbie Coe, for the purpose of causing special damages to Plaintiff, including conspiring with her while both were employed by Plaintiff to start a competing

insurance company and improperly soliciting Plaintiff's clients to leave Plaintiff and join Individual Defendant's new company.

73. As a direct and proximate result of Individual Defendant's intentional and improper actions, Plaintiff has suffered both actual and consequential damages.

74. Additionally, Plaintiff is entitled to punitive damages as a result of Individual Defendant's willful, reckless, and malicious actions intended to harm Plaintiff.

### FOR A SEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS
**(Conversion)**

75. Plaintiff incorporates Paragraphs 1-74 of the Verified Complaint as if repeated herein verbatim.

76. Defendants have wrongfully taken and converted the property of Plaintiff, including, but not limited to, documents and materials containing Plaintiff's confidential business information and trade secrets, all being the rightful property of Plaintiff.

77. Defendants know that Plaintiff is entitled to its property and the exclusive use thereof, but have intentionally taken it and withheld it from Plaintiff in conscious disregard of Plaintiff's ownership rights.

78. Upon information and belief, the actions of Defendants were taken with the intent of permanently depriving Plaintiff of the use, custody, ownership, and control of its confidential information and trade secrets without paying for the same. Upon information and belief, the actions of Defendants were willful, wanton, without right or justifiable cause, or the consent of Plaintiff, and calculated to cause damages to Plaintiff.

79. Plaintiff is entitled to its property, the exclusive use thereof, and damages incurred as a result of Defendants' wrongful conversion. Additionally, Plaintiff is entitled to punitive

damages as a result of Defendants' willful, reckless, and malicious actions intended to harm Plaintiff.

## FOR AN EIGHTH CAUSE OF ACTION AS TO ALL DEFENDANTS
### (Unjust Enrichment)

80. Plaintiff incorporates Paragraphs 1-79 of the Verified Complaint as if repeated herein verbatim.

81. Plaintiff conferred a benefit upon Individual Defendant during his employment, to wit, access to confidential and trade secret information regarding Plaintiff's customers and compensation for contracts and revenue resulting from Plaintiff's customers.

82. Defendants' misappropriation of Plaintiff's confidential information and trade secrets has resulted in an unjust enrichment to Defendants under circumstances where it would be inequitable for Defendants to utilize and enjoy that property without Plaintiff being duly compensated for its value.

83. Defendants' conduct alleged above has enabled and will continue to enable Defendants to compete unfairly with Plaintiff. These actions were wrongful and performed in a malicious manner to harm Plaintiff and to unjustly enrich Defendants at Plaintiff's expense.

84. As a direct and proximate result of Defendants' improper conduct, Plaintiff is entitled to be reimbursed and compensated for Defendants' unjust enrichment and is entitled to the disgorgement of any and all profits, earnings, and commissions attributable to Defendants' wrongful actions. Additionally, Plaintiff is entitled to punitive damages as a result of Defendants' willful, reckless, and malicious actions intended to harm Plaintiff.

### FOR A NINTH CAUSE OF ACTION AS TO ALL DEFENDANTS
(Accounting)

85. Plaintiff incorporates Paragraphs 1-84 of the Verified Complaint as if repeated herein verbatim.

86. Plaintiff is entitled to an accounting of the proceeds, earnings, benefits, and profits earned by Defendants arising out of their unlawful conduct.

87. Plaintiff has suffered and will continue to suffer immediate and irreparable harm, and Defendants will be unjustly enriched, unless the Court orders an accounting.

### FOR A TENTH CAUSE OF ACTION AS TO ALL DEFENDANTS
(Constructive Trust)

88. Plaintiff incorporates Paragraphs 1-87 of the Verified Complaint as if repeated herein verbatim.

89. Plaintiff is entitled to the imposition of a constructive trust for its benefit on any proceeds, earnings, benefits, and profits earned by Defendants arising out of their unlawful conduct.

90. Plaintiff has suffered and will continue to suffer immediate and irreparable harm, and Defendants will be unjustly enriched, unless the Court imposes a constructive trust for Plaintiff's benefit.

### FOR AN ELEVENTH CAUSE OF ACTION AS TO ALL DEFENDANTS
(Injunctive Relief)

91. Plaintiff incorporates Paragraphs 1-90 of the Verified Complaint as if repeated herein verbatim.

92. Defendants' misconduct as alleged previously herein is continuing.

93. If unrestrained, Plaintiff will suffer irreparable harm for which there is no adequate legal remedy because it is impossible to: (a) determine the impact that could occur

from Defendants' violations of the CFAA, tortious interference with Plaintiff's express and implied contracts, and use and threatened use of Plaintiff's trade secrets; or (b) measure the full extent of monetary damages that Plaintiff will suffer.

94. Upon information and belief, unless restrained, Individual Defendant will continue his employment with Corporate Defendant and continue to use and pose a threat to further use of Plaintiff's trade secrets, causing additional irreparable harm to Plaintiff. Plaintiff, therefore, is entitled to injunctive relief.

### IV. Prayer for Relief

**WHEREFORE,** Plaintiff prays for relief as follows:

(a) The Court enter judgment in its favor;

(b) The Court grant Plaintiff preliminary and permanent injunctive relief enjoining Defendants and those in active concert or participation with them from using, disclosing, or otherwise misappropriating Plaintiff's confidential information and/or trade secrets pursuant to Rule 65 of the Federal Rules of Civil Procedure, S.C. Code Ann. § 39-8-50, and the common law;

(c) The Court grant Plaintiff preliminary and permanent injunctive relief enjoining Defendants and those in active concert or participation with them from soliciting Plaintiff's customers about whom Defendants have obtained Plaintiff's confidential or trade secret information as such solicitation would require and/or permit Defendants to unfairly utilize Plaintiff's trade secrets and confidential information;

(d) The Court order Defendants to return any and all property and/or information rightfully belonging to, or wrongfully taken from, Plaintiff, including, but not limited to, any and all documents, materials, or electronic media (computers, hard drives, computer discs, PDA's, etc.) containing information regarding Plaintiff, its products, and/or customers;

(e) The Court order Defendants to submit to a computer examination and inspection of all of their computer systems and data files by a computer forensics expert at Defendants' expense to ensure all of Plaintiff's misappropriated information and trade secrets have been identified and later permanently removed from such systems;

(f) The Court order an accounting and impose a constructive trust to be held for the benefit of Plaintiff to disgorge Defendants of the profits attributable, directly or indirectly, to the wrongful actions by Defendants;

(g) The Court award Plaintiff actual damages, consequential damages, exemplary damages, punitive damages, reasonable attorney's fees, pre-judgment interest, and costs in an amount to be determined at trial; and,

(h) The Court award Plaintiff such other and further relief that it deems just and proper.

Respectfully submitted,

FISHER & PHILLIPS LLP


By: s/ Reyburn W. Lominack, III
Reyburn W. Lominack, III (Fed. I.D. #9438)
rlominack@laborlawyers.com
Attorney for Plaintiff

Fisher & Phillips LLP
Post Office Box 11612
Columbia, South Carolina 29211
(803) 255-0000 (Telephone)
(803) 255-0202 (Facsimile)

Dated this 12th day of October 2009